1

Hon. Ronald B. Leighton

2

3

4

5

6

7

8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10
11

ALLENMORE MEDICAL INVESTORS,
LLC, a Washington limited liability company,

No. 3:14-cv-05717-RBL

12

Plaintiff,

FIRST AMENDED COMPLAINT

13

v.

14
15
16
17

THE CITY OF TACOMA, WASHINGTON,
a municipal corporation; MARILYN
STRICKLAND, an individual; LAUREN
WALKER, an individual; RYAN MELLO, an
individual; JAKE FEY, an individual;
VICTORIA WOODARDS, an individual;
MARTY CAMPBELL, an individual; DAVID
BOE, an individual;, and JOHN DOE 1-20,

18

Defendants.

19
20

For its First Amended Complaint, Plaintiff Allenmore Medical Investors, LLC alleges:

21

**I. PARTIES**

22
23
24
25
26

1.      Plaintiff Allenmore Medical Investors, LLC ("AMI") is a limited liability
company formed under the laws of the State of Washington.  AMI has paid all required fees
and may lawfully maintain this action.  AMI was at all relevant times the developer of the
commercial project located at 1965 South Union Avenue, Tacoma, Washington now known
as Allenmore Marketplace.

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
– Page 1



Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

jj230501.02

1        2.      Defendant City of Tacoma, Washington ("City of Tacoma" or "City") is a

2  municipal corporation and has authority and responsibility for issuance of building permits,

3  land use approvals, parcel configuration approvals including boundary line adjustments, and

4  other approvals for real property developments within the City of Tacoma.

5        3.      Defendant Marilyn Strickland is and was at all times relevant to this Complaint

6  the Mayor of the City of Tacoma and a member of the Tacoma City Council.  All acts and

7  omissions of Defendant Strickland alleged herein were done by her in her official capacities.

8        4.      Defendant Lauren Walker is and was at all times relevant to this Complaint a

9  member of the Tacoma City Council and was during certain relevant times the Deputy Mayor

10  of the City of Tacoma.  All acts and omissions of Defendant Walker alleged herein were done

11  by her in her official capacities.

12        5.      Defendant Ryan Mello is and was at all times relevant to this Complaint a

13  member of the Tacoma City Council.  All acts and omissions of Defendant Mello alleged

14  herein were done by him in his official capacity.

15        6.      Defendant Jake Fey was at all times relevant to this Complaint a member of

16  the Tacoma City Council.  All acts and omissions of Defendant Fey alleged herein were done

17  by him in his official capacity.

18        7.      Defendant Victoria Woodards is and was at all times relevant to this Complaint

19  a member of the Tacoma City Council.  All acts and omissions of Defendant Woodards

20  alleged herein were done by her in her official capacity.

21        8.      Defendant Marty Campbell is and was at all times relevant to this Complaint a

22  member of the Tacoma City Council.  All acts and omissions of Defendant Campbell alleged

23  herein were done by him in his official capacity.

24        9.      Defendant David Boe is and was at all times relevant to this Complaint a

25  member of the Tacoma City Council.  All acts and omissions of Defendant Boe alleged herein

26  were done by him in his official capacity.  Defendants Strickland, Walker, Mello, Fey,

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
– Page 2

Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

jj230501.02

1    Woodards, Campbell, Boe are referred to herein collectively as the "Individual Defendants."

2          10.    Defendants John Doe 1-20 are public officers and employees of the City of

3    Tacoma other than the above-named defendants, and persons not employed by the City of

4    Tacoma, whose identities are presently unknown and who acted on behalf of the City and the

5    individual defendants named above to carry out the wrongful actions described in this

6    Complaint.  Plaintiff will identify the John Doe defendants after adequate opportunity for

7    discovery has been provided.

8                 **II.    JURISDICTION AND VENUE**

9          11.    The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

10         12.    Venue is proper in the Western District of Washington pursuant to 28 U.S.C. §

11   1391 because (a) defendants reside in this district and (b) a substantial part of the events and

12   omissions giving rise to the claim occurred, and the property that is the subject of the action is

13   situated, in this district.

14                **III.    FACTS COMMON TO ALL CLAIMS**

15         13.    In February 2010, JLO Washington Enterprises, Inc. contracted to purchase

16   real property located in Tacoma, Washington then owned by the Tacoma Lodge No. 174 of

17   the Benevolent & Protective Order of Elks (the "Elks Lodge Property" and "the Elks,"

18   respectively).  The Elks Lodge Property consisted of approximately eighteen (18) acres of real

19   property located between Union and Cedar Avenues, north of South 23rd Street, in the City of

20   Tacoma.

21         14.    JLO Washington Enterprises, Inc. is a Washington corporation and an affiliate

22   of AMI.  In May 2011, JLO Washington Enterprises, Inc. assigned to AMI all of JLO

23   Washington Enterprises, Inc.'s right, title, powers and interest in the purchase and sale

24   agreement with the Elks and the Elks Lodge Property, and AMI accepted the assignment.  An

25   "Assignment of Buyer's Interest in Purchase and Sale Agreement" was recorded on June 14,

26   2011 in the real property records of Pierce County, Washington under Recording Number

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
– Page 3

Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

jj230501.02

1  201106140566.

2     15. In December 2010, JLO Washington Enterprises, Inc. filed a State

3  Environmental Protection Act ("SEPA") application together with a building (grade and fill)

4  permit application with the City of Tacoma, including all required studies and backup to

5  support the applications.  The primary development project described in the SEPA application

6  consisted of a medical and related professional office campus including up to 760,000 square

7  feet of medical and professional office space, a hospital and retail space.  The SEPA

8  application also included an alternate project consisting of 155,000 square feet of retail space

9  and 200,000 square feet of medical and professional office space.  On or about March 23,

10  2011, the City of Tacoma issued a Mitigated Determination of Non-Significance.  On or about

11  July 27, 2011, the City of Tacoma issued a Final Mitigated Determination of Non-

12  Significance (SEP2010-40000156354) and Building Permit (grade and fill permit)

13  (BLD2010-40000156353).

14     16. Beginning in the first quarter of 2010, JLO Washington Enterprises, Inc. began

15  working with a large medical services provider to be the primary occupant of the commercial

16  project on the Elks Lodge Property.  That party became indecisive regarding its needs in the

17  spring of 2011 and communicated its final decision to not proceed with the project in July

18  2011.

19     17. Given the medical services provider's indecisiveness and subsequent decision

20  not to participate in the project, JLO Washington Enterprises, Inc. reviewed alternative uses

21  and occupants for the Elks Lodge Property and the entitlements and other approvals needed to

22  proceed with an alternative development.  Among the requirements for both the originally

23  envisioned and alternative development projects was convenient access to the property by

24  vehicles traveling southbound on Union Avenue.  AMI discussed this issue with City of

25  Tacoma officials, who recommended adding a U-Turn for southbound Union Avenue traffic

26  to improve accessibility.  AMI agreed with that recommendation and, as requested by the City

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
– Page 4



Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

jj230501.02

1   officials, commissioned an engineering study and report. After reviewing the report and other

2   pertinent data, City officials placed the proposed U-Turn on the docket for the City Council's

3   Environmental and Public Works Committee on August 24, 2011, and recommended that it be

4   approved. At the August 24, 2011 hearing, however, Defendant Mello and other City Council

5   members posed questions unrelated to the traffic and public safety impacts of the proposed U-

6   Turn, demanding information on whether the proposed development of the Elks Lodge

7   Property included a "big box" retailer. Notwithstanding the absence of any testimony or other

8   information that raised public safety or other concerns within the purview of the

9   Environmental and Public Works Committee, the Committee rejected the U-Turn

10   recommendation and did not provide a "do pass" recommendation to the City Council. This

11   action was irrational, arbitrary and capricious, failed to serve a legitimate governmental

12   purpose, was done for an improper purpose – to delay and prevent AMI's entirely lawful

13   development project from proceeding – and was an improper means of accomplishing such

14   improper purpose. A decision on whether to approve the U-Turn proposal was scheduled for

15   the next City Council meeting, to be held on August 30, 2011.

16         18.    On August 30, 2011, certain members of the Tacoma City Council attended a

17   Public Utility Board Study Session that included a bus ride to the Cowlitz Salmon Hatchery.

18   In attendance for the August 30, 2011 Study Session and bus ride were Defendants Strickland,

19   Mello, Fey, Woodards, Campbell and Boe. The agenda for the Study Session did not include

20   any item relating to a moratorium on development or building activity in the City of Tacoma,

21   any item relating to proposed development at 1965 S. Union Avenue, or any item relating to

22   the U-Turn proposal. Nevertheless, during the August 30, 2011 Study Session and/or bus ride

23   Defendants Strickland, Mello, Fey, Woodards, Campbell and Boe discussed and evaluated the

24   moratorium idea, the proposed development at 1965 S. Union Avenue, and the U-Turn

25   proposal and decided to present and adopt the Moratorium (hereafter defined) at the City

26   Council meeting to be held later that day and to remove the U-Turn proposal from the

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
– Page 5

Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

1    meeting docket.  These actions by Defendants Strickland, Mello, Fey, Woodards, Campbell

2    and Boe violated the Open Public Meetings Act, RCW chapter 42.30, were done for an

3    improper purpose – to delay and prevent AMI's entirely lawful development project from

4    proceeding – and used improper means of accomplishing such improper purpose.

5         19.    At the regularly scheduled August 30, 2011 Tacoma City Council meeting held

6    after the Study Session concluded, Defendants Mello, Fey, Campbell and Walker introduced a

7    proposed ordinance that was not included on the published Agenda for the August 30, 2011

8    meeting or any other meeting.  The proposal introduced at the August 30, 2011 City Council

9    Meeting was to adopt a city ordinance imposing a six-month moratorium, effective

10   immediately due to an alleged "public emergency," on acceptance of applications for new

11   building or other development permits associated with the establishment, location or

12   permitting of combined format retail establishments within the City of Tacoma that exceed

13   65,000 square feet in the aggregate ("Moratorium").  The Moratorium was denominated as

14   City of Tacoma Ordinance No. 28014.   City Council Members (and Defendants herein)

15   Strickland, Walker, Mello, Fey, Woodards, Campbell, and Boe voted in favor of Ordinance

16   No. 28014.  In addition to adding the Moratorium to the agenda for the August 30, 2011 City

17   Council Meeting, the U-Turn proposal was removed from the agenda.

18        20.    The purpose and intent of the Moratorium, and of Defendants Strickland,

19   Walker, Mello, Fey, Woodards, Campbell, and Boe in presenting and/or adopting the same at

20   the August 30, 2011 City Council Meeting, was to hinder, delay and prevent AMI from

21   moving forward with a "big box" retail development project at the Elks Lodge Property.

22   These actions were done for an improper purpose – a naked attempt to delay and prevent

23   AMI's entirely lawful development project from proceeding – and used improper means of

24   accomplishing such improper purpose.

25        21.    Although neither the SEPA application nor the initial building permit (grade

26   and fill) application identified the anchor merchant for the proposed project, rumors had

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
– Page 6

1    circulated in or about August 2011 that Wal-Mart was the likely anchor merchant.  At the

2    August 30, 2011 Tacoma City Council Meeting, and at other times, the Central Neighborhood

3    Council, a public entity, had stated that it strongly opposed allowing a Wal-Mart store in

4    Tacoma.  At the time they presented and adopted the Moratorium, Defendants Strickland,

5    Walker, Mello, Fey, Woodards, Campbell, and Boe had been informed and believed that the

6    likely anchor merchant for AMI's proposed development at the Elks Lodge Property was

7    Wal-Mart.

8          22.    At its meeting on August 30, 2011, the Tacoma City Council, by a vote of

9    seven in favor (Defendants Strickland, Walker, Mello, Fey, Woodards, Campbell and Boe),

10   one abstaining (Council Member Spiro Manthou) and one absent (Council Member Joe

11   Lonergan), adopted Ordinance No. 28014.  Pursuant to applicable law, however, Ordinance

12   No. 28014 could not take effect until publication in the Tacoma Daily Index, the City's

13   designated legal publication.  Ordinance No. 28014 was published in the Tacoma Daily Index

14   on September 1, 2011 and took effect upon such publication.

15         23.    On August 31, 2011, BCRA (as agent for Wal-Mart and AMI) filed with the

16   City of Tacoma an application for a building permit (No. 40000168923) together with related

17   applications and approvals to construct a new retail store of approximately 155,000 square

18   feet on the Elks Lodge Property that AMI was acquiring (the "Building Permit Application").

19   The Building Permit Application covered the entire Elks Lodge Property including not only

20   the portion on which the Wal-Mart store was to be constructed but also the portions which

21   AMI would be retaining and upon which AMI would be constructing improvements.  AMI

22   paid the Building Permit Application fee and the City issued a receipt therefor to AMI.

23         24.    The Building Permit Application was "complete" for purposes of RCW

24   19.27.095 and Tacoma Municipal Code ("TMC") 13.05.010 when filed on August 31, 2011.

25   Because the Building Permit Application was complete when filed, AMI's and Wal-Mart's

26   rights to a building permit under the laws and ordinances in effect on August 31, 2011 (i.e.,

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
– Page 7

Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

jj230501.02

1 | before the Moratorium took effect on September 1, 2011) were vested on August 31, 2011.

2 |     25.    On September 16, 2011, the City advised that the Building Permit Application

3 | was complete and vested to the codes in effect as of August 31, 2011 and contained sufficient

4 | information for review to commence. However, the City also stated – without citation to the

5 | Tacoma Municipal Code or any other legal authority – that the plat did not accurately reflect

6 | the existing parcel configuration and that, because of the Moratorium, the City could not

7 | accept an application for a boundary line adjustment or other plat-related submittal to change

8 | the lot configuration and was placing the Building Permit Application on hold. These actions

9 | by the City were irrational, arbitrary and capricious, contrary to law, failed to serve a

10 | legitimate governmental purpose, were done for an improper purpose – a naked attempt to

11 | delay and prevent AMI's vested and entirely lawful development project from proceeding –

12 | and used improper means of accomplishing such improper purpose.

13 |     26.    On or about September 27, 2011, AMI filed an application for a Boundary

14 | Line Adjustment ("BLA") relating to the Building Permit Application. The BLA satisfied all

15 | of the requirements set forth in TMC 13.04.085. Notwithstanding that the BLA satisfied all

16 | applicable legal requirements, the City refused to accept the BLA for filing or processing.

17 | This action by the City was irrational, arbitrary and capricious, contrary to law, failed to serve

18 | a legitimate governmental purpose, was done for an improper purpose – a naked attempt to

19 | delay and prevent AMI's vested and entirely lawful development project from proceeding –

20 | and used improper means of accomplishing such improper purpose.

21 |     27.    By letter dated September 27, 2011, AMI advised the City that its refusal to

22 | accept and process the BLA would cause substantial damages to AMI including but not

23 | limited to loss of money invested and lost profits.

24 |     28.    By letter dated September 29, 2011, AMI requested reconsideration of the

25 | City's decisions to refuse the BLA and to place the Building Permit Application on hold.

26 |     29.    By letter dated October 7, 2011, addressed to counsel for AMI, the City

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
– Page 8

Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

reaffirmed its decision to refuse to accept AMI's BLA "due to the City's moratorium on all land use permit applications for retail facilities in excess of 65,000 square feet." With respect to the Building Permit Application, the City's October 7, 2011 letter further stated:

> "With respect to the referenced Building Permit Application we are requesting additional information in order to proceed. As noted previously, from the City's perspective, there are two options for how to proceed:
>
> 1. You can submit a revised application that accurately reflects the existing parcel configuration and demonstrates how your proposed development meets code requirements for that existing parcel configuration; or
>
> 2. You can agree to leave the City's review of your application in its current status until the moratorium either expires or is terminated or modified so as to permit acceptance and processing of a boundary line adjustment consistent with the proposed configuration shown on your existing submittal."

This action by the City was irrational, arbitrary and capricious, contrary to law, failed to serve a legitimate governmental purpose, was done for an improper purpose – a naked attempt to delay and prevent AMI's vested and entirely lawful development project from proceeding – and used improper means of accomplishing such improper purpose.

   30. On October 14, 2011, AMI appealed the City's decision refusing to process the Building Permit Application. On October 21, 2011, AMI appealed the City's decision to refuse to accept and process the BLA.

   31. At the City Council meeting held on October 25, 2011, City Council Member Lonergan moved to exclude boundary line adjustments from the effect of the Moratorium. The motion was seconded but, after discussion, was tabled to the following week's meeting. Council Member Lonergan noted that the Moratorium had been introduced because the City Council had heard that a big box retailer was going in to the Elks Lodge Property and wanted to stop that from happening. City Council Member Manthou stated that the Moratorium had been directed solely at Wal-Mart.

   32. At the City Council meeting held on November 1, 2011, the Council voted to modify the Moratorium to "not apply to . . . boundary line adjustments." This modification of

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL) – Page 9



Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

1    the Moratorium was embodied in Substitute Ordinance No. 28027, which took effect on or
2    about November 11, 2011.

3        33.    On November 2, 2011, AMI resubmitted the BLA to the City.  On or about
4    November 14, 2011, the BLA was approved. On December 27, 2011, the BLA was recorded.

5        34.    On or about November 14, 2011, two and one-half months after the Building
6    Permit Application had been filed, the City released its hold on the Building Permit
7    Application and finally commenced review of the same.  The City's delay in commencing
8    review of the Building Permit Application from at least September 16, 2011 – the date the
9    City confirmed that the Building Permit Application was complete and vested – through
10   November 14, 2011 was irrational, arbitrary and capricious, contrary to law, failed to serve a
11   legitimate governmental purpose, was done for an improper purpose – a naked attempt to
12   delay and prevent AMI's vested and entirely lawful development project from proceeding –
13   and used improper means of accomplishing such improper purpose.

14       35.    On or about December 28, 2011, the City issued a Mitigated Determination of
15   Non-significance (MDNS) Adoption of and Addendum to an Existing Environmental
16   Document (SEP2011-40000172768).

17       36.    On or about February 3, 2012, the City advised that the building permit was
18   close to being ready for issuance but was subject, however, to numerous newly imposed
19   conditions applicable to AMI, including but not limited to conditions that (a) the plans for
20   construction on Lots 2-5 (that is, all portions of the Elks Lodge Property other than the Wal-
21   Mart parcel, which was denominated as Lot 1) be submitted on or before the grading and
22   erosion control inspection for the building on Lot 1, (b) the approved plans for construction
23   on Lots 2-5 be picked up and paid for on or before the foundation inspection for the building
24   on Lot 1, (c) an approved foundation inspection for buildings on Lots 2-5 be completed on or
25   before the framing inspection for the building on Lot 1, and (d) the final inspection for the
26   buildings on Lots 2-5 be completed on or before the final inspection for the building on Lot 1.

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
– Page 10

Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

jj230501.02

1    These actions by the City were irrational, arbitrary and capricious, contrary to law, failed to

2    serve a legitimate governmental purpose, were done for an improper purpose – a naked

3    attempt to delay and prevent AMI's vested and entirely lawful development project from

4    proceeding – and used improper means of accomplishing such improper purpose.

5            37.    On March 12, 2012, after objections were made by AMI and Wal-Mart, the

6    newly imposed conditions were removed and the building permit was finally issued to

7    construct a 152,243 square foot building for Wal-Mart on Lot 1, and for site and other

8    improvements to be constructed by AMI on Lots 2-5.

9            38.    Defendants John Doe 1-20 purposely hindered and delayed the processing of

10   the Building Permit Application, the BLA and the SEPA application and imposed

11   requirements not contained in the Tacoma Municipal Code or other applicable laws.   On

12   information and belief, in so acting to hinder and delay such applications, Defendants John

13   Doe 1-20 acted at the request and direction of Defendants Mello and Fey and possibly other

14   defendants, with the purpose and intent to damage AMI and delay or prevent the project.

15   These actions were irrational, arbitrary and capricious, contrary to law, failed to serve a

16   legitimate governmental purpose, were done for an improper purpose – a naked attempt to

17   delay and prevent AMI's vested and entirely lawful development project from proceeding –

18   and used improper means of accomplishing such improper purpose.

19           39.    As a direct and proximate result of defendants' actions as stated above, the

20   Building Permit Application was wrongfully placed on hold and issuance of the building

21   permit was wrongfully delayed, the BLA was wrongfully rejected for filing and processing,

22   and the SEPA Addendum was wrongfully hindered and delayed.

23           40.    By reason of the foregoing wrongful acts by defendants, AMI has sustained

24   damages consisting of (a) an increased price to purchase the Elks Lodge Property, (b)

25   payments made to the Elks to extend the duration of AMI's option to purchase the Elks Lodge

26   Property, which payments were not applicable to the purchase price, (c) a decreased purchase

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
– Page 11

Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

jj230501.02

1  price paid for the portion of the Elks Lodge Property sold to Wal-Mart, and (d) other

2  incidental and consequential damages, all in an amount to be proved at trial, but which is

3  expected to exceed $1,800,000.

4      41.    AMI filed a Claim for Damages Form with the City of Tacoma on August 19,

5  2014 pursuant to RCW chapter 4.96.  Sixty calendar days have elapsed since the Claim for

6  Damages Form was filed.

7  **IV.**    **CLAIMS FOR RELIEF**

8  FIRST CLAIM: VIOLATION OF 42 U.S.C. § 1983

9  (Deprivation of Plaintiff's Federal Constitutional Rights)

10      42.    Plaintiff realleges and incorporates by reference herein the allegations of

11  paragraphs 1-41 above.

12      43.    Plaintiff had property rights and interests in and to the Elks Lodge Property,

13  including but not limited to (a) the right to use and enjoy the land, (b) the right to develop the

14  property, (c) the right to obtain a building permit under the laws in effect when its Building

15  Permit Application was submitted (i.e., vested rights), (d) the right to obtain a boundary line

16  adjustment in accordance with TMC 13.04.085 upon submittal of its BLA, and (e) procedural

17  rights arising from the Tacoma Municipal Code, the Open Public Meetings Law and other

18  applicable laws that placed significant substantive restrictions on the City's decision-making

19  with respect to the Building Permit Application, the BLA, and AMI's other project-related

20  permit applications (individually and collectively, "Property Rights").

21      44.    Plaintiff's Property Rights were guaranteed and protected by the Fourteenth

22  Amendment to the United States Constitution.

23      45.    Plaintiff's Property Rights were clearly established at the time of the wrongful

24  acts alleged herein.

25      46.    Defendants deprived Plaintiff of its Property Rights without due process of

26  law.

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
— Page 12



Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

jj230501.02

1    47.    Defendants' actions were irrational or arbitrary, in violation of Plaintiff's

2    substantive due process rights, and singled Plaintiff out for discriminatory treatment.

3    48.    Defendants deprived Plaintiff of Plaintiff's constitutionally protected Property

4    Rights without procedural due process of law.  Defendants' denial of procedural due process

5    included, but was not necessarily limited to, failing to provide Plaintiff with adequate process

6    before meeting secretly and deciding to adopt the Moratorium and to remove Plaintiff's U-

7    Turn proposal from the agenda for the August 30, 2011 City Council Meeting, in violation of

8    the Washington Open Meetings Act, RCW chapter 42.30; and the attempted last-minute

9    imposition of newly-invented conditions to building permit issuance that were not contained

10   in applicable law and had not been applied to any prior application.

11   49.    Defendants denied Plaintiff the equal protection of the laws, in violation of the

12   Fourteenth Amendment to the United States Constitution.  Defendants singled Plaintiff and

13   Plaintiff's project out for discriminatory treatment.  Others subject to the Moratorium were

14   issued building permits, yet AMI, whose project was not subject to the Moratorium, had its

15   BLA and Building Permit Applications held up for months.  The City's asserted rationale for

16   the Moratorium was pretextual; the Moratorium was intended to stop AMI's project alone.

17   Defendants' actions were done intentionally, lacked a rational basis and/or were motivated by

18   an improper purpose.

19   50.    Defendants' actions harmed Plaintiff.

20   51.    In depriving Plaintiff of its constitutionally protected Property Rights,

21   Defendants acted under color of state law pursuant to 42 U.S.C. § 1983.

22   52.    In taking the actions described above, the Individual Defendants and

23   Defendants John Doe 1-20 were driven by evil motive or intent and/or showed a reckless or

24   callous indifference to AMI's constitutional rights, and are liable for punitive damages.

25   53.    By reason of the foregoing, all Defendants are liable to Plaintiff for (a)

26   compensatory damages including (i) an increased price to purchase the Elks Lodge Property,

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
– Page 13

Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

jj230501.02

1  (ii) payments made to the Elks to extend the duration of AMI's option to purchase the Elks

2  Lodge Property, which payments were not applicable to the purchase price, (iii) a decreased

3  purchase price paid for the portion of the Elks Lodge Property sold to Wal-Mart, and (iv)

4  other incidental and consequential damages, all in an amount to be proved at trial, but which

5  is expected to exceed $1,800,000, plus prejudgment interest; (b) the Individual Defendants

6  and Defendants John Doe 1-20 are liable for punitive damages; and (c) all Defendants are

7  liable for Plaintiff's reasonable attorney's fees under 42 U.S.C. § 1988 and for Plaintiff's

8  taxable costs.

9  <u>SECOND CLAIM: TORTIOUS INTERFERENCE WITH</u>

10  <u>CONTRACTUAL RELATIONSHIP AND BUSINESS EXPECTANCY</u>

11  54.    Plaintiff realleges and incorporates by reference herein the allegations of

12  paragraphs 1-53 above.

13  55.    As assignee of JLO Washington Enterprises, Inc., Plaintiff had a valid

14  contractual relationship with the Elks to purchase the Elks Lodge Property at an agreed price.

15  Plaintiff's assigned interest was effective not later than May 26, 2011.

16  56.    Plaintiff also had a valid business expectancy that it would sell a portion of the

17  Elks Lodge Property to Wal-Mart for an agreed upon price.

18  57.    On or before August 30, 2011, Defendants had knowledge of Plaintiff's valid

19  contractual relationship with the Elks and Plaintiff's valid business expectancy with Wal-

20  Mart.

21  58.    Defendants intentionally interfered with Plaintiff's contractual relationship

22  with the Elks and Plaintiff's business expectancy with Wal-Mart, which interference induced

23  or caused modifications to the contractual relationship and the business expectancy that were

24  materially adverse to Plaintiff and which, if not agreed to, would have resulted in the

25  complete breach or termination of Plaintiff's contractual relationship and Plaintiff's business

26  expectancy.

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
– Page 14

Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

jj230501.02

59.     Defendants interfered with Plaintiff's contractual relationship with the Elks and Plaintiff's business expectancy with Wal-Mart for an improper purpose and/or used improper means.

60.     By reason of the foregoing, Plaintiff sustained damages.

61.     Defendants are liable to Plaintiff for (a) compensatory damages including (i) an increased price to purchase the Elks Lodge Property, (ii) payments made to the Elks to extend the duration of AMI's option to purchase the Elks Lodge Property, which payments were not applicable to the purchase price, (iii) a decreased purchase price paid for the portion of the Elks Lodge Property sold to Wal-Mart, and (iv) other incidental and consequential damages, all in an amount to be proved at trial, but which is expected to exceed $1,800,000, plus prejudgment interest; and (b) Plaintiff's taxable costs.

## THIRD CLAIM: CIVIL CONSPIRACY

62.     Plaintiff realleges and incorporates by reference herein the allegations of paragraphs 1-61 above.

63.     The Individual Defendants and Defendants John Doe 1-20 conspired and agreed to try to "kill" Plaintiff's vested and entirely lawful development project – that is, Defendants conspired and agreed to take actions to defeat the project and prevent it from ever being realized or constructed.

64.     The Individual Defendants and Defendants John Doe 1-20 sought to accomplish the objective of their conspiracy by unlawful means, including but not limited to wrongfully refusing to accept and process the BLA and then placing a hold on the Building Permit Application on the grounds that the BLA could not be processed, deliberately stalling and delaying action on the Building Permit Application and the BLA, treating Plaintiff differently than other permit applicants, treating the Building Permit Application and the BLA as if they were subject to the Moratorium when said Defendants knew or should have known that they were not, creating and imposing new conditions to permit issuance that had no basis

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
– Page 15

Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

1   in applicable law and were not applied to other permit applicants, depriving Plaintiff of its

2   Property Rights without due process of law, and in other respects to be proven at trial.

3          65.    The conspiracy as above alleged harmed Plaintiff.

4          66.    By reason of the foregoing, the Individual Defendants and Defendants John

5   Doe 1-20 are liable to Plaintiff for (a) compensatory damages including (i) an increased price

6   to purchase the Elks Lodge Property, (ii) payments made to the Elks to extend the duration of

7   AMI's option to purchase the Elks Lodge Property, which payments were not applicable to

8   the purchase price, (iii) a decreased purchase price paid for the portion of the Elks Lodge

9   Property sold to Wal-Mart, and (iv) other incidental and consequential damages, all in an

10  amount to be proved at trial, but which is expected to exceed $1,800,000, plus prejudgment

11  interest; and (b) Plaintiff's taxable costs.

12                    **V.     PRAYER FOR RELIEF**

13         WHEREFORE, Plaintiff Allenmore Medical Investors, LLC prays for relief as

14  follows:

15         A.     For judgment against Defendants, and each of them, jointly and severally, for

16  Plaintiff's compensatory damages in an amount to be proved at trial;

17         B.     For an award of punitive damages against the Individual Defendants and

18  Defendants John Doe 1-20, and each of them, jointly and severally, to punish them for their

19  wrongful actions against AMI and deter them from similar unlawful conduct in the future;

20         C.     For an award of prejudgment interest;

21         D.     For an award of Plaintiff's reasonable attorney's fees pursuant to 42 U.S.C. §

22  1988 and Plaintiff's taxable costs; and

23         E.     For such other and further relief as the court deems just and proper.

24

25

26

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
– Page 16

Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

jj230501.02

1    DATED:  December 12, 2014.

2                                    RAFEL LAW GROUP PLLC

3
                                     By _____
4                                        Anthony L. Rafel, WSBA # 13194
5                                        Tyler B. Ellrodt, WSBA # 10638

6                                    Attorneys for Plaintiff Allenmore Medical
                                     Investors, LLC
7

8

9                                    Proof of Service

10         I certify that Plaintiff's First Amended Complaint was served upon defendants'

11   counsel, Jean P. Homan, via the Court's ECF system.

12         DATED:  December 12, 2014.

13
                                     _____
14                                      Anthony L. Rafel, WSBA # 13194

15

16

17

18

19

20

21

22

23

24

25

26

FIRST AMENDED COMPLAINT (No. 3:14-cv-05717-RBL)
– Page 17

Rafel Law Group PLLC
600 University St., Ste. 2520
Seattle, Washington 98101
206.838.2660

jj230501.02