HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALLENMORE MEDICAL INVESTORS, LLC, a Washington limited liability company,<br><br>                      Plaintiff,<br><br>     v.<br><br>THE CITY OF TACOMA, WASHINGTON, et al.,<br><br>                    Defendant. | CASE NO. C14-5717RBL<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS<br><br>[DKT. #9] |

## I. INTRODUCTION

THIS MATTER is before the Court on Defendants' Motion for Partial Judgment on the Pleadings [Dkt. #9], pursuant to FRCP 12(c), 12(h)(2) and 12(b)(6).  The Court has reviewed the pleadings submitted by both sides to the controversy and, based on the pleadings and the representations about the pleadings, the Court hereby orders that the plaintiff's conspiracy claims pursuant to 42 U.S.C. § 1985 are **DISMISSED** with the consent of plaintiff.  As for the defendants' motion seeking dismissal of plaintiff's § 1983 action on grounds of absolute immunity, that motion is **DENIED WITHOUT PREJUDICE**.

**II. FACTS**

In February 2010, Allenmore Medical Investors, LLC (Allenmore) contracted to purchase 18 acres from the Tacoma Elks Lodge.  In December 2010, Allenmore submitted a building permit application describing a project as a 760,000 square foot complex including medical/professional office space, hospital and retail space or alternatively, 155,000 square feet of retail space and 200,000 square feet of medical/professional office space.  The building permit was accompanied by a State Environmental Protection Act (SEPA) application.  In July 2011 the City issued a final Mitigated Determination of Non-Significance and a grading permit.  Also in July 2011 the intended anchor tenant, a large medical services, decided not to proceed with the project.

Allenmore continued with the permitting process by commissioning an engineering report exploring traffic access issues to the property.  The engineering report recommended a U-turn for southbound traffic on Union Street.  The City Council's Environmental and Public Works Committee raised questions about whether the project involved a "big box" retailer.  Despite the staff's "approval" recommendation, the Committee rejected the U-turn proposal. The U-turn proposal was placed on the next meeting of the City Council (8/30/11).  At that meeting the City Council proposed and passed an ordinance imposing a six-month moratorium on acceptance of new building permits or other development permits related to retail projects within the City exceeding 65,000 square feet.  The Ordinance (28014) was proposed and passed as a matter of "public emergency."  Besides approving the moratorium, which was not on the agenda, the Council removed Allenmore's U-turn proposal from the agenda.  Ordinance 28014 was published in the Tacoma Daily Index on September 1, 2011 and took effect on that day. Allenmore's right to a building permit vested under the laws and ordinances in effect on August

31, 2011, the day they filed a building permit to construct 155,000 square feet of retail space on the property.  Nevertheless, the City refused to process the application.

The City asserted that the plat required a boundary line adjustment (BLA) and that it could not accept any BLA applications at the time due to the moratorium.  Allenmore requested reconsideration.  Again, the City refused to process the BLA.  Allenmore appealed the City's decision refusing to process the building permit application and refusing to accept and process the BLA.

At the City Council meeting of October 25, 2011, a council member made a motion to exclude Boundary Line Adjustments from the effect of the moratorium.  The motion was tabled to the following week.  Council member Lonergan stated that the moratorium had been adopted because the Council had heard that a big box retailer was going into the Allenmore property and the Council wanted to stop that from happening.  Council member Manthou was more direct: the moratorium, he said, was directed solely at Wal-Mart.

On November 1, 2011, the Council voted to modify the moratorium to not apply to boundary line adjustments.  Allenmore promptly resubmitted the BLA on November 2.  It was approved on November 14, and recorded on December 27, 2011.  The City released its hold on the BLA and commenced review of it.  In February 2012, the City added new requirements that all buildings on the site be constructed concurrently and that all businesses on the site open at the same time.  Allenmore and Wal-Mart objected to these new requirements because they were not in the state and/or local law at the time the building permit application was filed.  The City relented and issued the building permit for a 152,243 square foot Wal-Mart store.

Allenmore sued the defendants for damages caused by delay in the construction of the store and the consummation of the acquisition of the property.  At the heart of its claims are the

1  arbitrary capricious and improper efforts to derail the project.  Defendants assert that they are

2  entitled to absolute immunity for all consequences flowing from the moratorium and its

3  aftermath.

4                        **III. STANDARD ON MOTION TO DISMISS**

5          Pursuant to Fed. R. Civ. P. 12(h)(2), a motion made pursuant to Fed. R. Civ. P. 12(c) may

6  be used to raise a Fed. R. Civ. P. 12(b)(6) defense.  *George C. Frey Ready-Mixed Con. v. Pine*

7  *Hill C.M.*, 554 F.2d 551, 553 n. 2 (2nd Cir. 1977).  "Analysis under Rule 12(c) is 'substantially

8  identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine

9  whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'"

10  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

11         In order to survive a motion to dismiss for failure to state a claim, the complaint must

12  contain factual assertions sufficient to support a facially plausible claim for relief.  *Ashcroft v.*

13  *Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v.*

14  *Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  A claim for relief is

15  facially plausible when "the plaintiff pleads factual content that allows the court to draw the

16  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

17  678.

18         When considering a Rule 12(b)(6) motion to dismiss, the court's review is limited to the

19  pleadings and construes all facts in the light most favorable to the non-moving party.  *McCalden*

20  *v. California Library Ass'n.*, 955 F.2d 1214, 1219 (9th Cir. 1990), *cert. denied*, 504 U.S. 957, 112

21  S.Ct. 2306, 119 L.Ed.2d 227 (1992).  *See also Twombly*, 550 U.S. at 555.  This standard <u>does</u>

22  <u>not</u>, however, require the court to accept as true conclusory allegations, formulaic recitations of

23  the elements, or legal conclusions.  *Iqbal*, 556 U.S. at 678-69 ("….[Rule 8] does not unlock the

24

1    doors of discovery for a plaintiff armed with nothing more than conclusions.")  Therefore, a

2    court discounts conclusory statements, which are not entitled to the presumption of truth, before

3    determining whether a claim is plausible.  *Id.*

4    Finally, "[a]part from factual sufficiency, a complaint is also subject to dismissal [under

5    Rule 12(b)(6)] where it lacks a cognizable legal theory, or where the allegations on their fact

6    show that relief is barred for some legal reason." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d

7    696, 699 (9th Cir. 1990), overruled on other grounds by *Twombly*, 550 U.S. at 562-63 (to the

8    extent *Balistreri* relied upon the "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41,

9    45-56, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

10    It is defendants' burden as the moving party to show that dismissal is justified under the

11    applicable standard.  This is a heavy burden

12    A claim "should not be dismissed unless it appears **beyond all doubt** that the
13    plaintiff can prove no set of facts in support of his claim which would entitle him
to relief." *Gilligan v. Jamco Devel. Corp.*, 108, F.3d 246, 248 (9th Cir. 1977).  "It
is axiomatic that the motion to dismiss for failure to state a claim is **viewed with**
14    **disfavor and is rarely granted**."  *Hall v. City of Santa Barbara*, 833 F.2d 1270,
1274 (9th Cir. 1986).

15    *Pierce v. NovaStar Mortgage, Inc.*, 422 F. Supp. 2d 1230, 1233-34 (W.D. Wash. 2006)

16    (emphasis added).

17                                    **IV.    DISCUSSION**

18    The Supreme Court has long held that state and regional legislators are absolutely

19    immune from liability under § 1983 for their legislative acts.  *See Tenney v. Brandhove*, 341 U.S.

20    367, 376-77 (1951); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S.

21    391, 405 (1979).  They are immune not for the sake of private indulgence, but so they may freely

22    discharge their public duties, as legislators.  *Tenney*, 341 U.S. at 377.  Thus, the immunity

23    attaches only to actions taken "in the sphere of legitimate legislative activity."  *Id*. at 376.  In

24

1  *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998), the Supreme Court extended this immunity to

2  local legislators, holding them "absolutely immune from suit under § 1983 for their legislative

3  activities."

4         Is the action taken by the defendants here "legislative" in nature or is it directed against

5  one or a few individuals and more in the nature of administrative or executive action?  Whether

6  an act is legislative turns on the nature of the act, rather than on the motive or intent of the

7  official performing it.  *Bogan*, 523 U.S. at 54.

8         The Supreme Court "has generally been quite sparing in its recognition of claims to

9  absolute official immunity."  *Chateaubriand v. Gaspars*, 97 F.3d 1218, 1220 (9th Cir. 1996)

10  (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)).  The burden of proof in establishing

11  absolute immunity is on the one who asserts it.  *Trevino v. Gates*, 23 F.3d 1480, 1482 (9th Cir.

12  1994).

13         There are four factors to be considered when determining whether an action is legislative

14  in nature:  1) whether the act involves ad hoc decision-making, or the formulation of policy; 2)

15  whether the act applies to a few individuals, or to the public at large; 3) whether the act is

16  formally legislative in character; and 4) whether it bears all the hallmarks of traditional

17  legislation.  *Bechard v. Rappold*, 287 F.3d 827, 829 (9th Cir. 2002).  Each factor will be

18  considered in turn.

19  **A.  Ad Hoc Decision-Making Versus Formulating Policy.**

20         Defendants rely on the express grant authority under the Washington State Growth

21  Management Act to making zoning decisions that generally apply to the entire City.  A vote on a

22  building moratorium is not a quasi-judicial act; it is legislative.  *In re Recall of Ackerson*, 143

23  Wn.2d 366, 375 (2001).  The defendants rely on the holding in *Kuzinich v. County of Santa*

24  *Clara*, 689 F.2d 1345, 1348 (9th Cir. 1982) to the effect that although the ordinance in question

1  may have had an immediate practical effect on only two parcels of land held by the same owner,

2  by its terms the ordinance applied to all parcels within the covered area.

3      In turn, the plaintiff cites *Kaahumanu v. County of Maui*, 315 F.3d 1215 (9th Cir. 2003)

4  where the court rightly concluded that the County's denial of a conditional use permit was ad hoc

5  because typically a zoning ordinance establishes a rule of general application, but there the

6  ordinance affected only a single permit and a single parcel of land.

7      At this early state of the litigation, plaintiff mounts a persuasive argument that Ordinance

8  28014 was conceived, nurtured and hatched with one entity and one parcel in mind:  Wal-Mart

9  Stores and by extension Allenmore and Allenmore's property.  The Court has not been presented

10  with evidence of other properties and other entities affected by Ordinance 28014 inasmuch as

11  this motion is on the pleadings only.

12  **B.  Act Applies to a Few Individuals Versus the Public at Large.**

13      Ordinance 28014 was enacted in a climate of fear, in a time of "public emergency."  The

14  follow-up to the moratorium was to direct staff to not process the building permit application

15  filed before the effective day of the moratorium and furthermore, to refuse to accept the

16  boundary line adjustment, and finally, to impose new conditions that were not authorized by state

17  or local law at the time right to a permit were vested.  To repeat, the Court has been presented

18  with no evidence on the public impact of the City's emergency rules and procedures.

19  **C.  Is the Ordinance Formally Legislative in Character?**

20      The process of enacting the moratorium was legislative in character by virtue of the act of

21  voting.  The actions that follow – not so much.  The majority on the City Council were plainly

22  trying to nip something in the bud, by legislation or some other means.

23

24

**D.  Does the Moratorium and its Process Bear all the Hallmarks of Traditional Legislation?**

The Court will not repeat itself about the formality of the legislative process.  The City claims that the people's representatives voted on a matter of public import.  The plaintiff claims it was improperly targeted because of its potential purchaser.  At this juncture in the proceedings, the plaintiff should have the opportunity to conduct discovery and present proof that Allenmore was the target and the only target of the City's anti-big box retailer policy.

## V. CONCLUSION

The defendants' motion as to 42 U.S.C. § 1985 is **GRANTED** and as to 42 U.S.C. § 1983 is **DENIED WITHOUT PREJUDICE** [Dkt. #9].

Dated this 30th day of December, 2014.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE