HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALLENMORE MEDICAL INVESTORS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF TACOMA, et al., <br><br> Defendant. | CASE NO. C14-5717-RBL <br><br> ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

THIS MATTER is before the Court on Plaintiff AMI's Motion for Partial Summary Judgment [DKT. #] AMI seeks a ruling as a matter of law the City of Tacoma's refusal to process a boundary line application related to a development was "wrongful and contrary to established law." [Dkt. #51]

The case involves[1] AMI's development of what used to be the Tacoma Elks Lodge property into what is now a Wal-Mart store and shopping center. In 2011, AMI had a contractual

---

[1] The Court previously ruled on the City's Motion for Judgment on the Pleadings and that Order [Dkt. #25] contains additional facts about the development and the case.

AMI now claims that one sentence in the Order's fact section—"Allenmore's right to a building permit vested under the laws and ordinances in effect on August 31, 2011, the day they filed a building permit to construct 155,000 square feet of retail space on the property"—is the

right to purchase the Elks property, which consisted of five lots. On August 30, 2011, the Tacoma City Council passed an emergency Ordinance imposing a six-month moratorium on "big box" retail development, allegedly because it was concerned about the possibility of a Wal-Mart-based shopping center on the Elks property. The Ordinance became effective September 1, 2011. In the interim—August 31, 2011—Wal-Mart (and its architect, BCRA) filed a building permit application for the development of a big box retail store and a host of related improvements. AMI paid the $44,000 permit review fee.

The permit application disclosed that the intended development would require a boundary line adjustment among the five lots. The City's Answer[2] in this case admits that the building permit application was "complete" when it was filed (and that the right to a building permit vested at that time, though it denies that AMI had any property interest in that application). [Dkt. #28 at ¶24]

Two weeks later, the City informed BCRA that the building permit application was "on hold" because it "did not accurately reflect the existing parcel configuration." Furthermore, due to the moratorium, the City explained that it could not "accept an application for a boundary line

---

Court's "holding." But as the City points out, its prior motion necessarily assumed that AMI's factual allegations were accurate.  Accordingly, the Court did not "hold" that the rights were vested, because it was not asked to make such a ruling (or to rule that they were *not* so vested). On the other hand, it seems unlikely that the City would try to (or could) argue that rights did not vest under the pre-moratorium regulatory scheme; it does not dispute that the complete permit application was filed the day before the moratorium became effective, and the City has admitted that the application was "complete" for purposes of RCW 19.27.095 on that date.

[2] AMI claims that the City's September 16 letter also described the application as "complete and vested per RCW 19.27.033 to the codes in effect as of 8/31/11" but the cited Exhibit D to the Oliphant Declaration [Dkt. #53] does not include that sentence. It does, however, reference an attached "Status Report" that is not included in the exhibit, and that report may be the source of the quote.

adjustment or other plat-related submittal to change the lot configuration at this time." [Dkt. # 53 at Ex. 4]

AMI filed a formal boundary line adjustment application on September 27, and the City now concedes that the adjustment otherwise met the Tacoma Municipal Code's prerequisites. [Dkt. #28 at ¶26] Nevertheless, it rejected the BLA application on October 7, citing (only) the moratorium:

> This letter is in response to your application for a Boundary Line Adjustment submitted on September 27, 2011 for the referenced Building Permit Application. After reviewing your application we have determined that due to the City's current moratorium on all land use permit applications for retail facilities in excess of 65,000 square feet we cannot accept your application for a boundary line adjustment at this time.

[Dkt. #53, Ex. F] AMI appealed, but before the appeal was decided, the City Council passed a substitute ordinance that excepted BLAs from the moratorium, effective November 11, 2011. AMI's BLA application was accepted and, approved, and recorded on December 27.

AMI seeks partial summary judgment on its claim that the initial City's failure to process the BLA was wrongful and contrary to law. It argues that the Building permit application, filed before the moratorium took effect, vested its rights in the land use laws as they existed at that time. It argues that the BLA was a ministerial act, that its necessity was clearly described in the materials supporting the building permit application, and that it was otherwise proper under the Tacoma Municipal Code—a point the City concedes.

The City argues that the building permit application was filed by BCRA, on behalf of Wal-Mart, and that AMI had "no interest" in that application. It first raised this issue in its Answer, but its contemporaneous articulation of the reason for refusing to process the application made no mention of it. On the issue raised in the motion—the propriety of the City's refusal to process the initial BLA application—it argues that the moratorium facially applied to "all land

use decisions" including BLA application. It does not substantively address the vested rights argument.

### A. Summary Judgment Standard.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248.  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. At 251-52.  The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250.  If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

**B. The City's "agency" argument is not a defense to the motion.**

The City's argument that AMI was not a party[3] to the building permit application and therefore had no interest to vest does not address the issue that is the subject of AMI's Motion, and is not a defense to it. AMI had the contractual right to purchase the property and was the developer of the site. It sold only a portion of the property to Wal-Mart and its continued ownership of the rest was referenced on the building permit application itself. It paid the permit fee and as it claims, was a "part of the team." Tellingly, the City's letter declining to process AMI's BLA application did not remotely rely on the now-primary defense that only BCRA and Wal-Mart had any interest in the building permit, and that the development rights vested only in them. [See Dkt. # ]

The City relies on *Westway Construction v. Benton County*, 136 Wn. App. 859 (2006) for the proposition that only the applicant has a vested right in a development permit, and the land owner does not. But Westway does not so hold. There, Westway (a mining company) applied for a special use permit to mine rock on property owned by Phelps. When the County imposed restrictions on the permit, Phelps and Westway sued for damages under Chapter 64.40 RCW. The Washington Court of Appeals ruled that neither had standing under that statute: Phelps because he did not file the special use permit application, and Westway because it had "no interest" in the property.

---

[3] The City also argues that "there is no evidence" that BCRA was acting as AMI's agent when it filed the building permit application on Wal-Mart's behalf. But there is Mr. Oliphant's testimony that it was so acting, and there are the inferences to be drawn from the fact that AMI was the contract purchaser and developer of the property, and that it paid the permit fee (whether or not it was later reimbursed as part of its agreement with Wal-Mart). And there is the argument that the development rights "run with the land," and not personal to the applicant. But this is AMI's Motion seeking a ruling on the legitimacy of the City's refusal to process the BLA application in September and October 2011, not the City's Motion for summary judgment on AMI's standing.

*Westway* is not persuasive. It involves a different cause of action[4] and a different kind of permit, and it is not a "vested rights" case, at all. And if it *did* control, logically the building permit application at issue here would not have vested any rights in Wal-Mart or BCRA—like Westway, neither of them owned[5] the property at the time the application was filed.

In any event, AMI seeks a ruling that the City's actual, stated reason for refusing to process the BLA application was not valid; that it was wrongful and contrary to law.

**C.   The City's stated basis for refusing to process the BLA application was not valid.**

AMI argues that the development rights vested when the building permit application was filed, prior to the moratorium's effective date. It seeks a ruling as a matter of law that the City's refusal to process its BLA application wrongful and contrary to law.

It accurately points out that the vested rights doctrine "strongly protects the right to develop property" (*Potala Village Kirkland LLC v City of Kirkland*, 183 Wn. App. 191 (2014)) and that the filing a complete building permit application (though not lesser applications) triggers the vesting. *Erickson v. Associates, Inc.*, 123 Wn.2d 864 (1994). The doctrine entitles developers to have land development proposals processed under the regulations in effect at the time a complete building permit application is filed, regardless of changes in zoning or other land use regulations. *Abbey Road Group, LLC v City of Bonney Lake,* 167 Wn.2d 242 (2009).

---

[4] As AMI points out, Chapter 64.40 RCW provides a means for "*owners* of a property interest who have filed for a development permit" to recover damages if the permit is wrongfully denied. There is no such claim in this case.

[5] The City also seems to argue that AMI had an insufficient property interest because the land was still "owned" by the Elks when the BLA application was filed. [Dkt. #55 at note 6]. But it is hardly debatable that there are many protected property rights that are something less than outright fee simple ownership: mortgages, liens, real estate contracts, leases, easements, and vested development rights, for example. It is not disputed that AMI had the property under contract, and had "an interest" in it. It was not a stranger to the development effort.

1    AMI also argues that the "use disclosed" in the application is protected, and that the
2  government may not frustrate the owner's legitimate plans made known to it during the
3  permitting process. *See Noble Manor Co. v. Pierce County,* 133 Wn.2d 269 (1977). It claims that
4  it was entitled to have its BLA application considered under the law as of August 31, before the
5  moratorium. Finally, it argues that the boundary line adjustment disclosed on the application
6  complied with the then-existing Code and approving it was a ministerial act. See *Chelan County*
7  *v Nykreim*, 105 Wn. App. 339 (2001).

8    The City's argument on this substantive point of AMI's motion is not materially different
9  than the one it advanced in its October 7 letter explaining that it would not process AMI's BLA
10 application: it claims that the moratorium applied to all land use decisions, including boundary
11 line adjustments. Other than its claim that AMI did not have any rights in the building permit
12 application, the City's response does not address AMI's claim that the rights that vested with that
13 permit application include the right to have the BLA application reviewed under the existing
14 code.

15   But it is clear that the development rights vested when the complete valid building permit
16 application was filed, and AMI was entitled to have its proposal judged against the law as of that
17 date:

18> A valid and fully complete building permit application for a structure, that is permitted under the zoning or other land use control ordinances in effect on
19> the date of the application shall be considered under the building permit ordinance in effect at the time of application, *and the zoning or other land use*
20> *control ordinances in effect on the date of application*.

21 RCW 19.27.095(1)(emphasis added). The City admits the BLA was proper under the
22 Tacoma Municipal Code. It refused to process the BLA application because, it claimed,
23 the moratorium prohibited it from doing so. This is contrary to Washington law, and it
24

1  was wrongful as a matter of law. AMI's Motion for partial summary judgment on that

2  *limited* point is therefore GRANTED.

3       IT IS SO ORDERED.

4       Dated this 8th day of August, 2016.

                                                      Ronald B. Leighton
                                                     United States District Judge

ORDER ON PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 8