HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALLENMORE MEDICAL INVESTORS, LLC,<br><br>               Plaintiff,<br>   v.<br><br>CITY OF TACOMA, et al.<br><br>               Defendants. | CASE NO. C14-5717-RBL<br><br>ORDER ON FEES<br><br><br>DKT. #145 |

THIS MATTER is before the Court on Plaintiff Allenmore Medical Investors' Motion for Fees and an Award of Prejudgment Interest [Dkt. #145]. This case asked the Court to consider whether the Defendants City of Tacoma and its councilmembers discriminated against Plaintiff AMI by interfering with its efforts to develop a shopping center with Walmart as the anchor tenant. It was hard fought. Defendants prepared a motion for judgment on the pleadings and three motions for summary judgment (two considered by the Court, one of which included oral argument). After a twelve-day bench trial, the Court dismissed AMI's claims against the individual councilmembers, who it determined had legislative immunity, but found the City liable for harming AMI. It awarded AMI $2,026,391.00—approximately 2/3 of its total compensatory damages request.

1 AMI's counsel, Rafel Law Group, now requests its attorney's fees under 42 U.S.C. § 1988(b). RLG asks the Court to enhance its total fee award beyond the amount AMI owes it because RLG's fees are lower than the market rate and it obtained "substantial success." AMI asks the Court to award it prejudgment interest. The City does not dispute the reasonableness of RLG's rates but argues the Court should reduce RLG's total award because it was unsuccessful on its claims against the councilmembers and because it billed unnecessary time. The City opposes an enhancement because it disagrees this case is one of the "rare and exceptional" circumstances when one might be warranted. It also argues against prejudgment interest on the ground that Court awarded AMI its compensatory damages already.

## I.     DISCUSSION

RLG is a small Seattle law firm practicing construction and real estate litigation. Anthony Rafel, an attorney with 35 years of experience, is the managing partner. Paul Raskin, who has practiced for 24 years, is his partner. Rafel and Raskin performed the majority of the work on this case. Tyler Ellrodt worked as of counsel. He has 37 years of experience. RLG hired temporarily Lynne Wilson, a contract associate with 29 years of experience. Christina Schuck, who has six years of experience, and Timothy Feth, who was admitted to the bar in 2016, work as the firm's associates. Ellrodt, Wilson, and Feth each spent around 150 hours on the case. Shuck spent even less. Trish Bashaw, a senior paralegal with 40 years of experience, was the only paralegal assigned to the case. Only Rafel worked on it from its inception.

RLG claims it spent 3,410.70[1] total hours pursuing AMI's claims, and incurred $1,051,872.50 in total attorney's fees. It proposes this amount as the lodestar, to which it asks the Court to apply a 20% enhancement.

---

[1] Includes a one hour reduction from Bashaw's time. *See* Dkt. #145 (Rafel Dec.) at 5.

| Name | Hourly Rates | Average Rate[2] | Total Hours Worked | Total Fees Charged (Proposed Lodestar) |
|---|---|---|---|---|
| Anthony Rafel | 2012: $360<br>2013: $360<br>2014: $375<br>2015: $375<br>2016: $375<br>2017: $400 | $383.03 | 1128.8 | $432,360.50 |
| Paul Raskin | 2016: $350<br>2017: $375 | $360.69 | 1002.5 | $361,592.50 |
| Tyler Ellrodt | 2014: $350<br>2015: $350 | $350.00 | 137 | $47,950.00 |
| Lynne Wilson | 2015: $285 | $285.00 | 176.4 | $50,274.00 |
| Christina Shuck | 2012: $225 | $225.00 | 15.4 | $3,465.00 |
| Timothy Feth | 2016: $175<br>2017: $200 | $186.71 | 154.8 | $28,902.50 |
| Trish Bashaw | 2013: $160<br>2014: $160<br>2015: $160<br>2016: $160<br>2017: $160 | $160.00 | 795.8 | $127,328.00 |
| **Totals** | | | **3410.7** | **$1,051,872.50** |
| **Total with Enhancement** | | | | **$1,262,247.00** |

Table 1: RLG employees' rates and hours spent pursuing AMI's case.

**A. Attorney's Fees.**

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses…but Congress enacted 42 U.S.C. § 1988 in order to ensure that federal rights are adequately enforced" by providing "that a prevailing party in certain civil rights actions may recover 'a reasonable attorney's fee as part of the costs.'" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550, 130 S. Ct. 1662, 1671, 176 L. Ed. 2d 494 (2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983)). A "reasonable fee" is one that "is

---

[2] The "Average Rate" reflects each individual's total fee charged divided by his/her total hours worked through April 28, 2017. *See* Dkt. #145 (Rafel Dec.) at 9–10.

sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case" without producing a windfall to attorneys. *Id*. at 552. Courts determine this number using "a two-step hybrid lodestar/multiplier approach." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007). The Court first establishes a lodestar by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation. *See id.*; *see also Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Second, in rare and exceptional cases, the Court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the lodestar calculation. See Perdue, 559 U.S. 554–55. The party seeking fees bears the burden of proof; it must submit evidence supporting the rates and hours claimed. *See Hensley*, 461 U.S. at 433.

**1. Reasonable Rate.**

RLG claims its rates are below market. It supports its argument with a declaration from James Savitt, a Seattle-based commercial litigator; prior attorney's fee awards granted by the Court in other cases; and descriptions of the background of most[3] of the employees on the case. The City does not dispute RLG's employees' hourly rates.

An hourly rate is reasonable if it falls within the range of "prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L.Ed.2d 891 (1984), given "the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir.). Courts do not determine this rate by referring to the rates actually charged. *See Chalmers*, 796 F.2d 1205, 1210 (9th Cir. 1986). Rather, the reasonable rate is based on the prevailing market rate for similar services. *See Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (citing *Carson v. Billings Police*

---

[3] RLG did not provide Wilson's or Shuck's education or accolades. *See* Dkt. #145 (Rafel Dec.) at 2–3.

*Dep't*, 470 F.3d 889, 892 (9th Cir. 2006) (holding the district court properly reduced the "reasonable rate" because the market rate—not the individual contract between the applicant attorney and the client—"provides the standard for lodestar calculations")).

Rafel and Raskin are experienced attorneys who showed great adeptness, poise, and resiliency before the Court, on paper and at trial. They represented AMI well. Savitt claims their rates, and their colleagues' rates, are reasonable but lower than the market average. Rafel, Raskin, and Ellrodt, each of whom has over 20 years of experience, charged between $350 and $400/hour. Savitt contends $450/hour for their levels of experience, ability, and this type of case is more common, although he has even seen commercial litigators' rates exceeding $600/hour. He contends RLG's associates' and Bashaw's rates are also "within the norms of this community for commercial litigation associates" but "at the lower end of the range." Dkt. #157 (Savitt Dec.) at 3. He does not detail what civil rights attorneys typically make per hour in Seattle, which is noteworthy because the civil rights (violations of equal protection and due process) aspect of this litigation justify shifting fees.

In the Court's experience, RLG's partner rates are at the lower end of the market range for both real estate and civil rights litigation, but they are within range. RLG and AMI agreed how much AMI would pay RLG's employees for their services per hour. This is not the type of case where unless RLG offered an indigent or destitute AMI a significant discount below its normal rates, AMI's civil rights would not have been vindicated. Rather, a skilled businessman and a successful law firm reached an agreement that induced RLG to accept representation; clearly the market welcomes the rates RLG charges. And while RLG's partner's rates are lower than they could be, Rafel and Raskin performed approximately seven times the amount of work as their associates. If they had charged more but had tasked their associates with researching and

drafting more, RLG's total fee request likely would mirror its present request. RLG's partners' lower-than-they-could-be-but-still-in-the-market rates appear to represent a trade-off for the partners' heavy involvement and need to keep costs reasonable. To adjust RLG's rates to the middle or higher end of the spectrum would contravene Congress's intent when it allowed for fee shifting in civil rights cases because it would either produce a windfall to RLG or would equate to a punitive damage award for AMI. **RLG's rates are reasonable as they stand.**

### 2. Hours Reasonably Expended.

RLG claims it spent 3,410.7 hours working on AMI's case. The City (1) argues RLG should not receive compensation for time spent pursuing claims on which it lost, and so asks the Court to reduce Rafel's and Raskin's hours by 20%. It requests a reduction of 222 hours (or $84,972.72) for Rafel and 196.6 hours (or $70,854.64) for Raskin. The City (2) also argues the Court should reduce RLG's total time by 218.775 hours (or $67,089.62) to properly eliminate duplicative, redundant, and unnecessary work. RLG argues all of its work was reasonable and necessary—as evidenced by the fact that AMI paid it without dispute and without knowing whether it would prevail—and to grant the City both of these categorical deductions would be to double-count hours against RLG.

#### i. Time Spent on Unsuccessful Claims.

The City argues the Court should not award RLG fees for the time it spent pursuing its unsuccessful claims, such as the claims it brought against the individual councilmembers. It asks the Court to deduct the time RLG spent opposing the dismissal of these claims. It suggests a 20% reduction in Rafel's and Raskin's time. RLG argues that because all of AMI's claims were based on a single set of facts, and because the Court awarded AMI nearly all of its requested damages, the Court should not carve out a reduction for its unsuccessful claims.

When a plaintiff brings multiple claims and only prevails on some, whether his counsel receives fees for pursuing the unsuccessful claims depends on the interconnectedness of his claims. *See Hensley*, 461 U.S. at 435. If plaintiff's claims involve "a common core of facts or [are] based on related legal theories," the Court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation" when awarding fees. *Id*. The Court should note that while a wholly compensatory fee may be appropriate, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may [just as easily] be an excessive amount" given the partial or limited success. *Id*. at 436. If a plaintiff instead brings "distinctly different claims for relief that are based on different facts and legal theories," the Court should not award counsel fees for his unsuccessful claims because the time spent on those claims "cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Id*. at 435. (internal quotations omitted).

RLG presented a unified story: The City, through its councilmembers, repeatedly attempted to block AMI's development of a shopping center housing Walmart as an anchor tenant. It claimed the Defendants wrongly singled out AMI to stop or delay Walmart from entering Tacoma. Especially considering the relationship between the Defendants, RGL would have been remiss not to pursue claims against both. RLG's billing records also show it devoted its time to the litigation as a whole and not to discrete claims.

The Court awarded AMI an amount close to its stated actual damages. AMI claimed $2,052,063 in damages, with a prejudgment interest of $1,190,196, for a total request of $3,242,259 in compensatory damages. The Court awarded it $2,026,391—approximately 2/3 of AMI's requested amount and a substantial result.

Because of the interconnectedness of AMI's facts and claims and its near-total success, the Court will not reduce blanketly RLG's hours. It should be compensated wholly.

### ii. Unnecessary Time.

The City presents seven tables to the Court identifying groupings of time it argues are duplicative, redundant, or unnecessary. It asks the Court to subtract these hours from RLG's award.

To calculate the number of hours to be compensated, the Court considers "whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 111 (9th Cir. 2008). "By and large, the Court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker," *id*. at 1112; however, the Court must exclude any "excessive, redundant, or otherwise unnecessary" hours. *Hensley*, 461 U.S. at 434.

First, the City argues the 77.6 hours (or $24,735.00) RLG spent responding to the City's first motion for summary judgment (Dkt. #12, City's Mtn. for Summary Judgment on Due Process) was unnecessary because the Court granted AMI a relief from its deadline. AMI argues it had to respond to the City's motion because the Court did not grant its request until after its response was due.

The City filed its motion on November 26, 2014. AMI's response was due December 15, 2014. On December 4, it asked the Court to relieve it of its deadline. This motion was noted for December 12, 2014. The Court granted AMI's motion on December 30, but by that time, AMI had already filed its response, and the City had filed a reply. *See* Dkt. #26.

Because the Court had not yet considered AMI's motion for relief from its response deadline, AMI had to file a response to the City's motion. To do otherwise, would have been to commit malpractice and to have forfeited a large part of AMI's case to the City. However, AMI could, and should, have taken efforts to bring its motion for relief to the Court's attention sooner, such as by calling or emailing the courthouse. AMI's seemingly lackluster attempt to push back its deadline suggests it did not need to move for relief. Although granted, this motion had little practical effect, and did not serve its intent. The Court therefore subtracts the time RLG spent on its motion for relief from its total hours. **Rafel's 2014 hours are reduced by 12.1 hours, and Ellrodt's 2014 hours are reduced by 0.50 hours.**

Second, the City asks the Court to excise 7 hours (or $2,050.00) of redacted time, arguing RLG has not shown, and cannot show, the time was reasonably spent.

| 7/14/2014 | Rafel | Prepare litigation [redacted] | 1.5 | $562.50 |
|---|---|---|---|---|
| 7/15/2014 | Rafel | Further revisions to [redacted] | .20 | $75.00 |
| 6/11/2015 | Bashaw | Trip to courthouse to [redacted] | 1.00 | $160.00 |
| 9/21/2015 | Wilson | [redacted]; [redacted] | 4.00 | $1,140.00 |
| 3/6/2016 | Rafel | Review revised [redacted; relates to potential settlement approach] | .30 | $112.50 |
| | | | **7** | **$2,050.00** |

Table 2: City's Table 2, Dkt. #153 (Response) at 16.

RLG argues these entries are extractions, and their reasonableness is understood when the entry is read as a whole.

Reading the extracted entries in conjunction with the other descriptions of work for each date indicate the redacted time was spent working on AMI's case. Except for a couple entries, however, the Court cannot evaluate their necessity. For example, the Court cannot infer the reasonableness of the July 14 and 15 entries. But, RLG's September 21, 2015 entry is understood in context as "[a]dditional Westlaw research regarding standing," and RLG's March 6, 2016 entry was for time spent strategizing its settlement approach. Both are reasonable and necessary

fee requests, and RLG should be compensated for them. Also, RLG has already excluded its June 11, 2015 travel time from its fee request, *see* Dkt. #145 (Rafel Dec.) at 5, so the Court will not double-count this time against it. The Court will **exclude 1.7 hours of Rafel's time in 2014** from RLG's total hours.

Third, the City identifies 85.7 hours (or $23,369.50) it argues the Court should subtract because they were unrelated to AMI's successful claims. This time includes media time, time RLG spent researching a motion to compel that the City argues RLG forfeited, AMI's unsuccessful § 1985 claim, and AMI's motion to exclude the defendants' expert, which the Court denied. RLG argues the Court should not make a reduction because these hours include time spent reviewing documents, preparing a motion to exclude the City's expert that led, arguably, to the City not calling that witness, and drafting a motion to compel.

The Court agrees RLG reasonably spent this time on the litigation, except to the extent it includes time spent with the press. The time RLG spent preparing to talk to the media, and talking to the media, was not spent litigating AMI's claims. Therefore, the Court will **deduct 1.3 hours of Rafel's 2014 time.**

Fourth, the City identifies five time entries (for a total of 2.7 hours) that it argues appear unrelated to the case, and it asks the Court to exclude these hours. RLG argues these time entries are for the work it spent pursuing a creative settlement strategy, but because Walmart was disinterested, AMI did not present its settlement idea to the City.

The Court encourages parties to settle their disputes. This time spent seeking a resolution is properly included in RLG's fee request.

1    Fifth, the City argues the Court should reduce RLG's hours spent responding to the
2 City's motion for judgment on the pleadings by 25%. RLG argues a 25% reduction is arbitrary
3 and improper.
4    RLG spent 31.9 hours (or $11,432.50) responding to the City's motion, which the Court
5 denied. The Court sees no reason to believe these hours were excessive, unreasonable, or
6 unnecessary. The Court will defer to RLG's professional judgment that it spent the time
7 responding to the City's motion that it needed to avoid an early dismissal of AMI's claims and
8 no more.
9    Sixth, the City asks the Court to discount the time RLG spent responding to the City's
10 written discovery requests by 25%. RLG again argues a 25% reduction is arbitrary.
11   RLG spent 35.6 hours (or $11,877.00) responding to the City's two sets of discovery
12 requests. This time includes the hours it spent supplementing its answers. RLG was obligated to
13 respond to the City's requests and to supplement those responses. The Court again defers to
14 RLG's judgment that it spent no more time than was necessary, especially because this time was
15 spent away from its preparation of its own case.
16   Seventh, the City argues the time RLG spent researching attorney client privilege and
17 pursuing a motion for *in camera* review was excessive, and so the Court should reduce it by
18 50%. RLG argues the Court granted AMI's motion, and the City should not be permitted to post-
19 hoc nitpick AMI's legal strategy.
20   Privilege and its limitations played an important role in this litigation, where many
21 witnesses were employed and represented by the City. RLG necessarily spent time researching
22 the issue, strategizing, and moving the Court. The Court determined the City properly withheld
23 as privileged most of the documents AMI challenged as improperly withheld, but not all. *See*
24

1 | Dkt. #59 (Order Compelling Production) at 2. One of those documents (Ex. 228) provided

2 | evidence of a meeting that the Court referenced in its Findings of Fact. The Court will not reduce

3 | the time AMI spent on privilege.

**3. Enhancement.**

RLG asks the Court to increase its fee award by 20%, for a total award of $1,262,247.00. It argues a multiplier is appropriate because it accepted an unpopular case (many in Tacoma did not want a Walmart in the City), the odds were stacked against it (as it "was literally suing City Hall" and the City's counsel represented most of the crucial witnesses, many of whom asserted privilege), and it prevailed (against skilled counsel with substantial resources).

The City argues against enhancing the lodestar under *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010). The *Perdue* Court concluded a district court did not provide proper justification for a large enhancement of fees it awarded. *Id*. at 557. It held that only in the "rare and exceptional circumstances" when the lodestar does not adequately consider "a factor that may properly be considered in determining a reasonable fee," may a district court apply an enhancement, *id*. at 554, and even then, may only do so if it calculates the enhancement "using a method that is reasonable, objective, and capable of being reviewed on appeal." *Id*. at 555. The City argues AMI has not shown this is a "rare" case warranting an enhancement. It also references *Perdue* for its argument that AMI should be compensated at the rate it requested. Citing *id*. at 557 n.7 ("There is nothing unfair about compensating these attorneys at *the very rate they request*.") (emphasis in original).

The lodestar figure is presumptively reasonable, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728, 107 S. Ct. 3078, 3088, 97 L. Ed. 2d 585 (1987), but, in rare cases, may be adjusted. *See Perdue*, 559 U.S. at 554–55. Courts must decide

whether to enhance or to reduce the lodestar figure based on an evaluation of the *Kerr* factors[4] that are not already subsumed in the initial calculation. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). An adjustment must be supported by "specific evidence on the record and detailed findings" that the lodestar figure "is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). The Court should calculate it "using a method that is reasonable, objective, and capable of being reviewed on appeal, such as by applying a standard rate of interest to the qualifying outlays of expenses." *Perdue,* 559 U.S. at 555.

AMI's case is not the rare exception warranting an enhancement. Rather, it is the typical case where the lodestar adequately reflects what the fee award should be, based on reasonable rates and hours. The factors RLG points to as justifying a multiplier—the undesirability of the case, the attorneys' abilities, and their success—are already subsumed in the lodestar calculation. RLG brings no new factor to the Court's attention. Accordingly, the Court refuses to enhance RLG's fee award.

**B.      Prejudgment Interest.**

AMI asks the Court to award it prejudgment interest, to wholly compensate it, because by closing, it had suffered $2 million in losses. It asks the Court to use the state rate of 12%,

---

[4] These factors are (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to accepting the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases). *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976). Many are subsumed in the lodestar calculation. *See Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045–47 (9th Cir. 2000) (discussing the factors that should be considered when deciding whether to adjust the lodestar figure).

1 because the federal rate is so low (1.04%), and this case involved a local controversy about the
2 misapplication of state vesting law and local land use laws (although it asks for fee shifting and
3 prejudgment interest because the case involved claims under 42 U.S.C. § 1983). Alternatively, it
4 suggests that if the Court wants to use a rate closer to the federal rate, it could use 8%.

The City points out that the Court has already awarded AMI compensatory damages, and so argues the Court has implicitly rejected AMI's request for prejudgment interest. It also argues that under *Teevin v. Wyatt*, 75 Wn. App. 110, 114, 876 P.2d 944 (1994), a litigant may not obtain prejudgment interest against the City.

Prejudgment interest compensates a plaintiff for losing the use of its money from the time its claim accrued until the entry of judgment. *See Schneider v. Cty. of San Diego*, 285 F.3d 784, 789 (9th Cir. 2002) (quoting *West Virginia v. United States*, 479 U.S. 305, 311 n.2, 107 S. Ct. 702, 93 L.Ed.2d 639 (1987)). Whether a court should award it "is a matter of statutory interpretation, federal common law, and, in some instances, state law." *See id*. (citing *Monessen Southwestern Ry. Co. v. Morgan*, 486 U.S. 330, 337–38, 108 S. Ct. 1837, 100 L.Ed.2d 349 (1988)).

The City extends *Teevin* too far. *Teevin* holds that when the City of Seattle enacted an ordinance obligating the City to pay judgments entered against its employees, it did not waive its immunity from prejudgment interest on tort judgments. *See Teevin*, 75 Wash. App. at 116. It says nothing about whether the City has immunity from prejudgment interest on federal equal protection and due process claims.

The Ninth Circuit has recognized the availability of prejudgment interest in § 1983 actions, but has remained silent on how district courts assess its appropriateness in cases involving equal protection and due process claims. *See Schneider v. Cty. of San Diego*, 285 F.3d

784, 791 (9th Cir. 2002) (concluding the district court correctly determined prejudgment interest could be awarded where county had committed an unconstitutional taking and setting forth analysis). At least two district courts have reasoned that "the award of prejudgment interest in a case under federal law is a matter left to the sound discretion of the trial court, and is governed by considerations of 1) fairness, 2) making the plaintiff whole (i.e., compensation), and 3) balancing the equities." *Murphy v. City of Elko*, 976 F. Supp. 1359, 1363 (D. Nev. 1997) (involving Section 1983 employee discharge claim); *see also Golden State Transit v. City of Los Angeles*, 773 F.Supp. 204, 214 (C.D.Cal.1991) (involving Section 1983 labor claim).

AMI does not describe why the Court should award it prejudgment interest, only that the Court "should." AMI's damages are not liquid. They were not determined until resolution of the case at trial, where AMI received 2/3, not 3/3, of its damages request. It would be fundamentally unfair to charge the City for damages it could not have predicated with certainty. AMI also neglects describing how its award of $2,026,391.00 in compensatory damages failed to make it whole. And unlike in an employment case, at no point was the City sitting on, and collecting interest on, AMI's $2 million. Rather, AMI lost money to the Elks (the seller of the property it developed) and from Walmart. The equities therefore do not tip in AMI's favor. The Court declines to issue AMI prejudgment interest.

## II. CONCLUSION

AMI's Motion for Fees and an Award of Prejudgment Interest [Dkt. #145] is GRANTED IN PART AND DENIED IN PART. RLG's hourly rates are reasonable without an enhancement. RLG's total hours must be reduced by the time it did not work in direct pursuit of this litigation: by 15.6 hours. It therefore reasonably expended 3395.1 hours on this case. The City owes **$1,045,913.80** in attorney's fees.

| Name | Average Rate | Adjusted Total Hours Worked | Adjusted Total Fees Charged (Lodestar) |
|---|---|---|---|
| Anthony L. Rafel | $383.03 | 1128.8 – 15.1 = 1113.7 | $426,576.80 |
| Paul R. Raskin | $360.69 | 1002.5 | $361,592.50 |
| Tyler B. Ellrodt | $350.00 | 137 – 0.5 = 136.5 | $47,775.00 |
| Lynne Wilson | $285.00 | 176.4 | $50,274.00 |
| Christina Schuck | $225.00 | 15.4 | $3,465.00 |
| Timothy S. Feth | $186.71 | 154.8 | $28,902.50 |
| Trish L. Bashaw | $160.00 | 795.8 | $127,328.00 |
| **Totals** | | **3395.1** | **$1,045,913.80** |

Table 3: Lodestar Calculation from December 4, 2012 to April 28, 2017.

AMI's request for prejudgment interest is DENIED.

IT IS SO ORDERED.

Dated this 15th day of June, 2017.

_____
Ronald B. Leighton
United States District Judge